**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Clay Daniel Burch,<br><br>Debtor. | C/A No. 09-07802-DD<br><br>Adv. Pro. No. 11-80030-DD<br><br>Chapter 7 |
| Clay Daniel Burch,<br><br>Plaintiff,<br><br>v.<br><br>Bank of America, N.A.,<br><br>Defendant. | **ORDER GRANTING DEFAULT JUDGMENT** |

This matter is before the Court on a Motion for Default Judgment ("Motion") filed by Clay Daniel Burch ("Plaintiff") on May 10, 2011. Bank of America ("Defendant") was served at numerous addresses; however, it did not file a response to Plaintiff's Motion. A hearing was held on Plaintiff's Motion on July 21, 2011. Defendant did not appear at the hearing.[1] Following the hearing, the Court took the matter under advisement for further consideration. The Court now makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52, made applicable to this matter by Fed. R. Bankr. P. 7052.

**FINDINGS OF FACT**

Plaintiff filed for chapter 7 relief on October 20, 2009. At the time of filing, Plaintiff had interests in three pieces of real property, including a 100 percent interest in real property located in Sunrise, Florida. At the time of filing, the tax assessed value of the Florida property was $240,500. The property was subject to two mortgages: a first mortgage with Defendant in the

---

[1] Defendant was served with the Complaint in this adversary proceeding. Defendant did not answer the Complaint, and the Clerk of Court has entered Defendant's default. The hearing in this matter was for the purpose of determining damages, if any.

amount of $411,000.00, and a second mortgage with Green Tree Servicing in the amount of $80,939.00. Plaintiff surrendered the Florida property in his chapter 7 bankruptcy case. Plaintiff's chapter 7 case proceeded in the usual course, and Plaintiff received his discharge on February 1, 2010. It is not clear from the record what steps, if any, Defendant has taken to foreclose its security interest.

Plaintiff listed Defendant as a creditor in his bankruptcy case, and Defendant was served with notice of the bankruptcy. However, Defendant continued to send correspondence to Plaintiff requesting payment and offering opportunities for a loan modification. On February 5, 2010, Plaintiff's bankruptcy counsel sent Defendant a cease and desist letter, explaining that Plaintiff had received a discharge in his chapter 7 bankruptcy case and that Defendant's attempts to collect payment from Plaintiff were a violation of the automatic stay and the discharge order. This letter proved ineffective, as Defendant continued to contact Plaintiff, in the form of both written correspondence and telephone contact. When attempting to reach Plaintiff by telephone, in addition to calling Plaintiff, Defendant repeatedly called Plaintiff's parents. Additionally, when making calls to Plaintiff or his parents, Defendant used "spoofing" to make Plaintiff's cell phone number appear on his parent's caller id and to make Plaintiff's parents' phone number appear on his caller id. Plaintiff's parents repeatedly informed Defendant of Plaintiff's chapter 7 case.

At the time of the filing of his bankruptcy case, Plaintiff lived in Columbia, South Carolina. However, at some point he moved to Florida. After Plaintiff moved, Defendant obtained his new address and telephone number and continued to contact him in reference to collection of the mortgage debt. Even though it received numerous letters from more than one attorney, advising it of Plaintiff's bankruptcy, Defendant continued to contact Plaintiff. Some of

the letters sent by Defendant included a provision stating, "Bank of America, N.A. is required by law to inform you that this communication is from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose. Notwithstanding the foregoing, if you are currently in a bankruptcy proceeding or have received a discharge of the debt referenced above, this notice is for informational purposes only and is not an attempt to collect a debt." While some of the letters Plaintiff received from Defendant contained this disclaimer, all of the telephone calls Defendant made to Plaintiff were for the purpose of collecting debt. Further, other letters, sent as recently as June 2011, informed Plaintiff that lender-placed flood and hazard insurance had been purchased at Plaintiff's expense.

Plaintiff ultimately filed a complaint with the State of South Carolina Department of Consumer Affairs. On November 22, 2010, Plaintiff received correspondence from the Office of the CEO and President of Defendant, advising Plaintiff that it would address the Plaintiff's complaints and fix any problems with its records. However, Defendant continued to repeatedly contact Plaintiff. Plaintiff testified that he and his parents no longer received telephone calls after March 2011, but that he continued to receive letters from Defendant up to the date of the hearing on Plaintiff's Motion. This adversary proceeding was filed on March 28, 2011.

## CONCLUSIONS OF LAW

### I. Violation of the Automatic Stay

11 U.S.C § 362 provides that the filing of a bankruptcy case prevents the continuation of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). Thus, after a debtor files a bankruptcy case, creditors cannot continue collection efforts on debts arising prior to the bankruptcy filing. An attempt to do so is a violation of the automatic stay.

Section 362(k)(1) provides, with one exception, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." In order to recover under this section, a debtor must prove five elements: "'(1) that a bankruptcy petition was filed, (2) that the debtors are 'individuals' under the automatic stay provisions, (3) that creditors received notice of the petition, (4) that the creditors' actions were in willful violation of the stay, and (5) that the debtor suffered damages.'" *Lomax v. Bank of Am., N.A.*, 435 B.R. 362, 376 (N.D. W.Va. 2010) (quoting *Grisard-Van Roey v. Auto Credit Ctr., Inc. (In re Grisard-Van Roey)*, 373 B.R. 441, 444 (Bankr. D.S.C. 2007)). For a creditor's act to be willful under section 362(k), the "creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay." *Lomax*, 435 B.R. at 376 (quoting *Citizens Bank v. Strumpf (In re Strumpf)*, 37 F.3d 155, 159 (4th Cir. 1994)).

The Court finds that Plaintiff has satisfied all the elements necessary to establish a claim under section 362(k). Plaintiff, an individual, presented evidence that Defendant received notice of his chapter 7 bankruptcy case when it was filed; despite this notice, Defendant repeatedly attempted to contact Plaintiff, both by telephone and by mail. The costs Plaintiff ultimately incurred were due to actions taken by Defendant after Plaintiff received his discharge; however, "'the mere violation of the automatic stay constitutes an injury to the debtor inasmuch as the creditor's violation restricts the debtor's breathing spell and subjects the debtor to continued collection efforts, possibly including harassment and intimidation.'" *Lomax*, 435 B.R. at 377 (quoting *Jackson v. Dan Holiday Furniture, LLC (In re Jackson)*, 309 B.R. 33, 38 (Bankr. W.D.Mo. 2004)). The repeated calls and letters to Plaintiff and his parents were harassing and interfered with Plaintiff's fresh start in his bankruptcy. Plaintiff suffered an injury as a result of

Defendant's willful violation of the automatic stay. Plaintiff is entitled to relief under section 362(k)(1).

### II. Violation of the Discharge Injunction

While the automatic stay terminates when a debtor receives his discharge, a discharge injunction takes its place. *See In re Robinson*, No. 10-12932-SSM, 2011 WL 832857, at *2 (Bankr. E.D. Va. Mar. 3, 2011). The discharge injunction "prohibits 'the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset [a discharged] debt *as a personal liability* of the debtor', [but] does not bar enforcement of a prepetition lien against property of the debtor." *Robinson*, 2011 WL 832857, at *2; 11 U.S.C. § 524(a)(2). While there is no private right of action for a violation of the discharge injunction, a court may hold a violating creditor in contempt of court and award sanctions against the creditor in order to compensate the debtor for the creditor's conduct. *Robinson,* 2011 WL 832857, at *3 (citing *Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 186–87 (Bankr. E.D. Va. 2000)). *See also In re Sexton*, No. 05-03152-8-RDD, 2011 WL 284180, at *3 (Bankr. E.D.N.C. Jan. 25, 2011). To establish civil contempt, a debtor must show: "(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's 'favor'; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result." *Sexton*, 2011 WL 284180, at *3 (quoting *In re Adams*, 2010 WL 2721205, at *2 (Bankr. E.D.N.C. July 7, 2010)).

In a case very similar to the one presently before the Court, the Bankruptcy Court for the Eastern District of North Carolina found civil contempt on the part of Bank of America due to Bank of America's repeated attempts to collect its debt from the debtors after the debtors entered

into a consent order with Bank of America giving it relief from the automatic stay. *In re Kirkbride*, No. 08-00120-8-JRL, 2010 WL 4809334 (Bankr. E.D.N.C. Nov. 19, 2010). Following the entry of the consent order and the confirmation of the debtors' plan, Bank of America repeatedly contacted the debtors regarding their properties for almost two years. *Id.* at *2. The court found that Bank of America had violated the debtors' discharge injunction and held it in contempt. *Id.* at *3, *4, *5. The court awarded the debtors compensatory damages of $63,000 and punitive damages in an equal amount, pursuant to authority allowing a court to issue sanctions in the form of "'actual damages, attorney's fees, and when appropriate, punitive damages.'" *Id.* at *5 (quoting In re Cherry, 247 B.R. 176, 187 (Bankr. E.D. Va. 2000)).

The Court finds *Lomax* and its treatment of the violating creditor helpful in resolving the issues presently before it. The evidence presented at the hearing on Plaintiff's Motion is sufficient to establish civil contempt on the part of Defendant. Defendant had notice of Plaintiff's bankruptcy and his discharge, as evidenced by the Court's records. Defendant also received notice at multiple addresses of hearings held in this adversary proceeding; however, Defendant ignored all notices it received regarding Plaintiff's bankruptcy case, with the exception of the complaint it received from the Department of Consumer Affairs. The events of which Defendant received notice were in Plaintiff's favor, as he, in filing and completing his bankruptcy case, received the protection of the automatic stay and relief from personal liability on his debt upon discharge. Defendant violated the discharge injunction by repeatedly contacting Plaintiff after his discharge in attempts to collect its debt from him personally. Finally, Plaintiff suffered harm as a result of Defendant's actions. Plaintiff was forced to spend time and money to stop Defendant from attempting to collect on a debt for which Plaintiff was no longer liable. Plaintiff endured months of harassing letters and telephone calls. Plaintiff had

to hire an attorney, miss time from work, and drive over 600 miles to prosecute this Motion. Plaintiff has met the elements to show civil contempt by Bank of America.

### III. Damages

When a court finds a party in contempt, it has the authority to issue sanctions against the offending party. *Kirkbride*, 2010 WL 4809334, at *5. As noted above, in *Kirkbride*, the Court issued sanctions against Bank of America in the amount of $63,000 for compensatory damages to the debtors and an additional $63,000 in punitive damages. *Id.* In the present case, Plaintiff presented evidence that he had incurred mileage expenses of $338.97 and attorney's fees in the amount of $3,016.08. Additionally, because he had to travel from Florida to South Carolina for a hearing on his Motion, Plaintiff missed a week of work; his weekly pay is $1,750. Based on these costs, it appears that Plaintiff is entitled to $5,105.05 in compensatory damages.

The Court also finds that Plaintiff is entitled to punitive damages. Punitive damages may be awarded in the case of a discharge injunction violation when a creditor has engaged in "egregious conduct", "malevolent intent", or "clear disregard of the bankruptcy laws." *Kirkbride*, 2010 WL 4809334, at *5 (citing *In re Adams*, 2010 WL 2721205, at *6 (Bankr. E.D.N.C. July 7, 2010)). In *Kirkbride*, the Court found that punitive damages were appropriate, stating:

> It is appallingly clear to the court that Countrywide and Bank of America, as successor-in-interest, flagrantly disregarded the court's order and discharge injunction. The creditor harassed the debtors with phone calls and repeatedly dismissed the debtors' attempts to resolve the situation in the face of a clearly worded order barring further collection on these debts. It is beyond egregious that after almost two years of facing such harassment on their own, the debtors finally caught the attention of Bank of America only when they retained counsel and filed this motion. . . . A sophisticated creditor cannot be excused for flagrantly ignoring the terms of an order to which it consented, and even more seriously, having no internal procedures in place to correct the error when it is clearly called to its attention.

*Kirkbride*, 2010 WL 4809334, at *5.  While this situation does not involve a consent order between the parties, Plaintiff did obtain assistance from more than one attorney, who repeatedly attempted to communicate with Defendant, to no avail.  The rest of the facts of Plaintiff's case and *Kirkbride* are strikingly similar.  Based on Defendant's egregious conduct in blatant disregard of bankruptcy laws and the rights of Plaintiff, the Court awards punitive damages in the amount of $12,000.

## CONCLUSION

For the reasons set forth above, Defendant violated Plaintiff's automatic stay and discharge injunction.  As a result, this Court finds civil contempt on the part of Defendant.  Defendant must pay Plaintiff $5,105.05 in compensatory damages and $12,000.00 in punitive damages within fourteen (14) days of the date of entry of this Order.  If Defendant fails to comply with this Order, further sanctions will be imposed.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**07/26/2011**



Entered: 07/27/2011

David R. Duncan
US Bankruptcy Judge
District of South Carolina